Paul S. and Irene **B. ESPENSHADE**

v.

The **UNITED STATES.**

No. 117–64.

United States Court of Claims.

Dec. 17, 1965.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger, Harmel & Schuchat, Washington, D. C., of counsel.

Michael I. Sanders, Dept. of Justice, Washington, D. C., with whom was Acting Asst. Atty. Gen., Richard M. Roberts, for defendant. C. Moxley Featherston, Lyle M. Turner, Philip R. Miller, and Richard J. Boyle, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COLLINS, Judge.

This is an action for the refund of Federal income taxes. Paul S. Espenshade, one of the joint petitioners, was retired from the United States Army in 1952. The basic issue in this suit is the extent to which retirement pay received by him is subject to taxation. (The singular term "plaintiff" will refer to Paul S. Espenshade.)

The facts, as indicated by the pleadings, can be summarized as follows: At the time of his retirement, plaintiff held the rank of lieutenant colonel. He was retired for physical disability, pursuant to section 402(f) of the Career Compensation Act of 1949.[1] With regard to the computation of his retirement pay, plaintiff had three choices. First, he could elect, under section 402(d) of the Career Compensation Act,[2] to receive an amount determined by multiplying his monthly basic pay (at time of retirement) by the product of (i) his number of "years of active service" and (ii) $2\frac{1}{2}$ per centum. Since plaintiff's number of years of active service was 27, this alternative would have meant retirement pay equal to $67\frac{1}{2}$ percent of his basic pay. The second possibility, which was also based upon section 402(d) of the Career Compensation Act, was an amount computed by multiplying basic pay by the percentage of his physical disability. Under the schedule of the Veterans' Administration, plaintiff's disability was rated at 10 percent.

The alternative selected by plaintiff was the third one. Because he had served in the Army during World War I, plaintiff was able to avail himself of section 15 of the Pay Readjustment Act of 1942, ch. 413, § 15, 56 Stat. 367, 368,

1. Chapter 681, § 402(f), 63 Stat. 820 (1949). This section provided for the disability retirement of persons who had completed at least 20 years of active service and who were otherwise qualified for disability retirement, except that their disability rating was below 30 percent. Section 402(f) was repealed by the Act of August 10, 1956, ch. 1041, § 53, 70A Stat. 680, and was replaced by 10 U.S.C. §§ 1201, 1204, and 1210(d) (1964).

2. Chapter 681, § 402(d), 63 Stat. 818 (1949). This section was repealed by the Act of August 10, 1956, ch. 1041, § 53, 70A Stat. 680, and was replaced by 10 U.S.C. §§ 1210(h), 1372–1373, 1401, and 1402(b)–(d) (1964).

Section 15 provided, in part, that the retired pay of any officer:

* * * who served * * * prior to November 12, 1918, hereafter retired under any provision of law, shall, unless such officer is entitled to retired pay of a higher grade, be 75 per centum of his active duty pay at the time of his retirement.

Clearly, this provision was the most advantageous for Colonel Espenshade. He has received, as retirement pay, an amount equal to 75 percent of his basic pay.

Income taxes in the respective years were assessed upon the portion of plaintiff's retirement pay which was in excess of 10 percent of his basic pay. In 1963, plaintiffs sought a refund of the taxes paid on the disability retirement pay for the years 1960 through 1962. Their application was disallowed by the Internal Revenue Service. In the present action, plaintiffs seek to recover the amount of taxes paid, during the years 1960 through 1963, with respect to the retirement pay.[3]

Section 104 of the Internal Revenue Code of 1954 lists a number of items which are not included in "gross income."[4] One such excluded item is "amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country * * *." Int.Rev.Code of 1954, § 104 (a) (4), as amended. If plaintiffs are to prevail, they must show that the retirement pay of Colonel Espenshade comes within the quoted language.

■ A basic part of plaintiffs' argument relates to section 402(h) of the Career Compensation Act. As originally enacted, this section, ch. 681, § 402(h), 63 Stat. 820 (1949), stated the following:

That part of the disability retirement pay computed on the basis of years of active service which is in excess of the disability retirement pay that a member would receive if such disability pay were computed on the basis of percentage of disability shall not be deemed to be a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed service in the armed forces of any country within the meaning of section 22(b) (5) of the Internal Revenue Code [of 1939], as amended.

Thus, the purpose of section 402(h) was to limit the extent of the exclusion from gross income provided in section 22(b) (5) of the 1939 Internal Revenue Code,[5] the predecessor of section 104(a) (4) of the 1954 Code. Previous to the passage of the Career Compensation Act, it had been held that, in view of section 22(b) (5) of the 1939 Code, all military disability retirement pay was excludible from gross income. See I.T. 3641, 1944 Cum.Bull. 70.[6]

According to plaintiffs, the general rule of excludibility continues with the sole exception of the modification set forth in section 402(h) of the Career Compensation Act. Plaintiffs contend that Colonel Espenshade's retirement pay is not within that exception, i. e., not "computed on the basis of years of active service," and that, therefore, such pay is totally exempt from income tax. We cannot accept the ultimate conclusion of plaintiffs.

---

3. Although refund claims were filed for the years 1960 through 1962, none was filed for the 1963 taxes. Therefore, under § 7422(a) of the 1954 Internal Revenue Code, plaintiffs' suit for 1963 taxes must be dismissed.

4. For the definition of "gross income," see § 61, Int.Rev.Code of 1954.

5. Int.Rev.Code of 1939, § 22(b) (5), 53 Stat. 10, as amended, ch. 619, § 113, 56 Stat. 811 (1942).

6. It is interesting to note that I.T. 3641, 1944 Cum.Bull. 70 (the ruling that military disability retirement pay was exempt from taxation), was not requested by the War Department. See Legal Subcommittee, House Comm. on Armed Services, Report of Investigation of Physical Disability Retirement, 80th Cong., 1st Sess. 6024 (1948).

At the outset, it should be noted that, although we are largely in agreement with the position of defendant, we are not in accord with defendant's assertion that the retirement pay of Colonel Espenshade is "computed on the basis of years of active service" within the meaning of section 402(h). The meaning of the quoted phrase was clarified when title 10 of the United States Code was revised and enacted into law.[7] The substance of section 402(h) of the Career Compensation Act appears in the revision as 10 U.S.C. § 1403 (1964). The latter section provides as follows:

That part of the retired pay of a member of an armed force, *computed under formula No. 1 or 2 of section 1401, or under section 1402(d), of this title* on the basis of years of service, which exceeds the retired pay that he would receive if it were computed on the basis of percentage of disability is not considered as a pension [etc.] * * *. (Emphasis supplied.)

The italicized portion, which was added in the revision, limits the meaning of "[computation] on the basis of years of service" to the two named sections, 1401 and 1402(d). Neither of these sections afforded the basis for determination of plaintiff's retirement pay.[8] Therefore, the present case is not encompassed by the literal terms of 10 U.S.C. § 1403.

Our conclusion regarding the literal applicability of 10 U.S.C. § 1403 does not mean that plaintiffs are entitled to recover. Section 1403 denies tax exemption to certain types of military disability retirement pay. It does not follow, however that all other types are within the exemption provided by section 104 (a) (4), Int.Rev.Code of 1954. In this regard, the legislative history of the Career Compensation Act of 1949 is highly pertinent. The spirit as well as the letter of section 1403 must be taken into account in construing section 104 (a) (4).

By 1947, it had become evident that the existing laws on military disability retirement were unsatisfactory. For example, the House Committee on Armed Services pointed out that:

* * * under existing law officers found to be physically unfit for service as a result of an incident of the service are eligible to be retired at a flat 75 percent of the pay of the rank in which they were then serving. Furthermore, such pay is tax-free.

Under these laws, many thousands of officers have been retired without regard to the percent of their disability and have since drawn 75 percent of their pay * * *.

H.R.Rep.No.779, 81st Cong., 1st Sess. 20 (1949). Thus, one objective of the Congress was to replace laws which failed to relate the degree of disability and the amount of retirement pay. See S.Rep. No.733, 81st Cong., 1st Sess. 22 (1949). This desired revision was effected by the Career Compensation Act which substituted a new theory of physical disability retirement, one based upon "either the degree of disability or years of service." H.R.Rep.No.779, 81st Cong., 1st Sess. 2 (1949). These concepts are embodied in 10 U.S.C. §§ 1401–1402 (1964).

With regard to taxation, the relevant provision of the Career Compensation Act was section 402(h), quoted above. Having considered the history of this legislation, we are unable to accept the suggestion of plaintiffs that the essential

**7.** Prior to the 1956 revision of title 10, section 402(h) was codified at 37 U.S.C. § 272(h). Section 402(h) and other provisions of the Career Compensation Act were repealed by the Act of August 10, 1956, ch. 1041, § 53, 70A Stat. 680. It is important to note that § 49 of the 1956 act declares that the legislative purpose was to restate, without substantive change, replaced laws such as § 402(h). 70A Stat. 640.

**8.** The relevant portions of 10 U.S.C. §§ 1401 and 1402(d) are based largely upon § 402(d) of the Career Compensation Act. It should be recalled that plaintiff's retirement pay was determined not under § 402(d) of the Career Compensation Act, but under § 15 of the Pay Readjustment Act of 1942.

purpose of the Congress was merely to remove the tax exemption with respect to retirement pay "computed on the basis of years of active service." We find that the Congress had a different purpose, i. e., that the Congress wished to restrict the exclusion and to permit only such pay as was based upon (or related to) the percentage of disability to escape taxation. For example, the report of the House Committee on Armed Services emphasized that, under the bill which was to become the Career Compensation Act, "There will be no more retirement of high-ranking officers with minor disabilities which results in tax-free retirement benefits." H.R.No.779, 81st Cong., 1st Sess. 23 (1949). Plaintiffs would have us disregard this congressional policy.

■ As a general matter, "provisions granting special tax exemptions are to be strictly construed." Helvering· v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29 (1940). In view of the desire of Congress to limit the exclusion of retirement pay, this rule is especially applicable to the present case. Our primary task is to determine the meaning of the exemption provided by section 104 (a) (4), Int.Rev.Code of 1954. In performing this function, we must be mindful of the congressional policy manifested in the legislative history of the Career Compensation Act of 1949, for that policy has significance beyond the express terms of the act. Cf. Frizzell v. United States, 123 Ct.Cl. 337, 340 (1952), and cases cited there.

Clearly, the portion of plaintiff's retirement pay which was taxed was not based upon his percentage of disability. In fact, section 15 of the Pay Readjust-

ment Act of 1942, the basis for plaintiff's receiving 75 percent of his basic pay, is not limited in its application to disability retirements. Section 15 pertains to officers " * * * retired under any provision of law." See, e. g., Menocal v. United States, 157 Ct.Cl. 252, 300 F.2d 920 (1962). Plaintiff has failed to demonstrate that the policy of limiting the tax exemption to retirement pay which reflects the percentage of disability was not applicable to persons such as himself. Freeman v. United States, 265 F.2d 66 (9th Cir. 1959), which plaintiffs cite, differs materially from the present case. The crucial distinction is that Freeman, who had been retired in 1943, elected to have his retirement pay based upon the laws in effect on October 11, 1949 (i. e., 1 day prior to the enactment of the Career Compensation Act). Because of Freeman's choice, which had been based upon sections 411 and 511 of the Career Compensation Act,[9] the parties agreed that section 402(h) of the act was inapplicable to the question of taxability.[10] Thus, there was no occasion to consider section 402(h) or the policy behind it. The same is not true of the present case. Unlike Freeman, Colonel Espenshade's entitlement to retirement pay was not based upon section 411 and related provisions.

■ To summarize, we hold that the portions of plaintiff's disability retirement payments which exceed 10 percent of his basic pay are fully taxable.[11] Such amounts are not within the exclusion from gross income provided by section 104(a) (4) of the 1954 Internal Revenue Code. In interpreting section 104(a) (4), we have attributed prime significance to the congressional policy indicated by the legislative history of the Career Compensation Act.

9. Chapter 681, 63 Stat. 823, 829 (1949).

10. In Freeman, 265 F.2d 66, 75, the Ninth Circuit noted that Rev.Rul. 55–88, 1955–1 Cum.Bull. 241, 243, confirmed the view of the parties regarding retirement pay which was computed on the basis of pre-October 12, 1949, law.
    Colonel Espenshade cites another portion of the same ruling, 1955–1 Cum.Bull. 241, 244, a portion dealing with the re-

tired pay of persons placed on the temporary disability retired list. We agree with defendant that this ruling is inapplicable to the present case; plaintiff was not on the temporary list.

11. The conclusion which we have adopted is similar to that expressed in Rev.Rul. 256, 1953–2 Cum.Bull. 13. The same position is stated in Dep't of the Army, Pamphlet 600–1 (Jan. 1965).

Therefore, plaintiffs' claims for the years 1960 through 1962 must be denied. For the reason stated in footnote 3, their suit regarding 1963 taxes is improper. Plaintiffs' motion for judgment on the pleadings is denied. Defendant's motion is granted, and the petition is dismissed.